## G. W. Morris v. Carrie Shepard.

Decided June 5, 1909.

**Contractor's Lien—Fraud.**

Evidence, in an action for debt and to foreclose a contractor's lien, held to sustain the action of the court in refusing to foreclose the lien on the ground of fraud and deceit in procuring it.

Error from the District Court of Dallas County. Tried below before Hon. Thos. F. Nash.

*William H. Allen,* for plaintiff in error.

*William A. Atwell,* for defendant in error.

RAINEY, Chief Justice.—Plaintiff in error brought this suit to recover on certain promissory notes executed by Carrie Shepard and to foreclose a contractor's lien on a certain residence and lot in the city of Dallas. The defendant plead *non est factum,* and that if said lien "is in existence it was secured by fraud and by overreaching this defendant and by taking advantage of her illiteracy and by false promises and untrue statements," etc. Upon a trial without a jury judgment was rendered for $110 in favor of plaintiff, but a foreclosure of the lien was denied. One assignment of error is presented by plaintiff in error, and that in substance is, that the court erred in not foreclosing the lien upon the lot. While the notes and contractor's lien appear regular on their faces, we are of the opinion that the lower court in refusing to foreclose the lien reached the justice of the case,

though as to the monied judgment a finding for a less sum would have been warranted under the evidence.

The evidence shows that Carrie Shepard is an illiterate negro woman, a widow, supporting two small children; that she owned and lived in a two-room cottage on the lot in controversy. Desiring to recover the cottage and add three rooms thereto, Morris promised to loan the money, $350, for that purpose, and thereupon she executed her several promissory notes to one Henry Jones, a negro carpenter, and executed a lien on the lot upon the faith of Morris' promise that he would furnish the money with which to make such improvements. Morris paid to Jones $100, agreeing to furnish more, and the notes were transferred to Morris, he discounting them $60; at another time he paid Jones $25, but failed to furnish any more; Jones went to work, tore the roof off the cottage and did some little work, but quit the job as Morris refused to furnish any more money, and Carrie Shepard had to employ another party to complete the job, she paying for the work and all the lumber bills, for which she never received a cent from Morris. She received from Jones $20 of the $100, which she paid for an abstract of the lot upon the statement of Jones that it was necessary, which statement was evidently inspired by Morris. One of the excuses made by Morris for not furnishing more money was that Jones owed him money. The amount owed Morris by Jones was $15 on a horse and buggy. Jones testified: "When I signed the mortgage I owed him $15. I do not know how much I paid him for that, but I think it was $80 or $90, and he took out in interest over $60 on that $15." Breedlove, a disinterested witness, stated that Morris, Jones and Shepard came to see him about the lumber bill and Morris told him he would pay the bill, and as Morris was a stranger to him he wanted references. Morris called him to one side, about thirty yards from Jones and Carrie Shepard, and told him in an undertone that the situation was just this: "Now I owe this money, and I will pay it, but Jones owes me a note, and I am trying to collect my note out of this money." That the principal and interest amounted to $70, which he thought was a good deal more than the original note, and he, Morris, stated the interest he was charging was fifteen percent per month. Morris never paid him the bill. Carrie Shepard paid the bills at different times, part of it by washing. Thus, it will be seen that Morris secured the notes of $350, being out therefor about $125, of which Carrie Shepard had paid back $40. He had taken the notes at a discount of $60, and is now trying to foreclose a lien on Carrie Shepard's house, excluding the discount of $60, for $165, for which he has not a shadow of right.

We think the conclusion is warranted that Carrie Shepard was grossly deceived in the transaction. That Morris at the time the contract was entered into did not intend to furnish near all the money promised, but intended to furnish as little as possible, get back all he could and then foreclose the lien, and buy in the property, anticipating that Carrie Shepard would not be able to pay it off. Morris' conduct was so grossly unjust and inequitable that he should not be allowed to take such an advantage of a poor, illiterate washerwoman, and the courts should not lend aid in furthering such an unconscion-

able scheme.  The lower court was right in refusing to foreclose the lien.  The judgment is affirmed.

*Affirmed.*

Writ of error refused.